# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CALVIN GRIER, JR.,** | : | **CIVIL NO. 1:10-CV-738** |
| | : | |
| Petitioner, | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **RAYMOND LAWLER et al.,** | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

**I.**     **Statement of Facts and of the Case**

The case of Calvin Grier presents a striking paradigm regarding the importance of understanding, and complying with, the timeliness requirements prescribed by law for federal habeas corpus petitions. Indeed, in this case, Grier presents the federal courts with a habeas petition which may be flawed in that it is at one time both tardy, and premature.

Grier's petition arises out of probation revocation proceedings conducted in the Court of Common Pleas of Dauphin County in December 2006. As a result of these proceedings, Grier was sentenced to 2 to 4 years in prison on December 21, 2006.(Doc. 1, Petition at 2 ¶¶ 2, 3, Doc. 10, Exhibit A, at 10.) Grier initially appealed this probation revocation ruling to the Pennsylvania Superior Court, but on September 27, 2007, the Superior Court discontinued Grier's appeal based on a motion filed by

his attorney withdrawing the appeal. (Doc. 10, Docket of Superior Court of Pennsylvania, No. 993 MDA 2007, at 2.)

Grier then took no further action in this case for almost two years, until June 24, 2009, when Grier filed a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq. This petition, which seeks in part to reinstate Grier's appellate rights, is currently pending before the Dauphin County Court of Common Pleas. (Doc. 10, Docket of Court of Common Pleas, No. CP-22-CR-0001482-2005, at 12-17.) Assuming that Grier's state-court judgment became final after the discontinuance of his direct appeal, on September 27, 2007, Grier had until September 27, 2008, to file the instant petition for a writ of habeas corpus. The statute of limitations might then have been tolled from June 24, 2009, until his PCRA petition is finally litigated, if that petition is ultimately found to be timely. By this measure, 636 days have elapsed prior to the filing of Grier's PCRA petition, a period of time which far exceeds the one-year statute of limitations prescribed by federal law.

On April 7, 2010, Grier commenced this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In his petition, Grier raises issues which parallel those which he is currently attempting to litigate in state court. Thus, Grier alleges that his conviction was obtained in violation of his right to due process and his right to the effective assistance of counsel. (Doc. 1, at 6-10 ¶ 12.)

For the reasons set forth below, it is recommended that this is a case where dismissal of this unexhausted petition, without prejudice, is appropriate.

## II. Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State;
>> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

#### (1.) Substantive Standards for Habeas Petitions

As this statutory text implies, state prisoners must meet demanding substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a

petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

> **(2.) Procedural Benchmarks for Habeas Petitions**
>
> **( a. ) Statute of Limitations**

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that petitioners timely file motions seeking habeas corpus relief. The

Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further appellate review of their cases, even if they did not, in fact, elect to seek such review. However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas

petitions; Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id. at 618-19.Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, Courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the

statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations. See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001);United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by the courts. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3d.Cir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d. Cir. 2002)(same).

### (b).  Exhaustion of State Remedies.

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy other procedural prerequisites, including a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically

will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled

that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

Oftentimes, these petitions may either contain wholly unexhausted claims or contain what are referred to as "mixed" claims: petitions with both exhausted and unexhausted claims. In such instances, the court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S.

509 (1982). This total exhaustion approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners who may be unable to fully exhaust state remedies on mixed claim petitions before the one-year statute of limitations prescribed for state habeas petitions elapses, the courts have adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance" procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S. 269 (2005).

Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance" procedure, if used too frequently, can undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court

would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Therefore, in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

**B. Grier's Petition Should Be Dismissed Without Prejudice Since It May Be Untimely and Undeniably Contains Unexhausted Claims**

In this case, Grier's petition may run afoul of both of these statutory safeguards, since the petition is both presumptively time-barred, yet procedurally consists of unexhausted claims. At the outset, the Commonwealth argues as a threshold matter that Grier's petition is now barred by § 2244(d)'s one-year statute of limitations. Our analysis of the delays in this litigation over the past several years suggests that these claims may, in fact, now be time-barred.

The history of this case reveals that Grier's petition arises out of probation revocation proceedings conducted in the Court of Common Pleas of Dauphin County in December 2006. As a result of these proceedings, Grier was sentenced to 2 to 4 years in prison on December 21, 2006.(Doc. 1, Petition at 2 ¶¶ 2, 3, Doc. 10, Exhibit A, at 10.) Grier initially appealed this probation revocation ruling to the Superior Court, but on September 27, 2007, that court discontinued his appeal based on a

motion filed by his attorney withdrawing the appeal. (Doc. 10, Docket of Superior Court of Pennsylvania, No. 993 MDA 2007, at 2.) Grier then took no further action in this case for almost two years, until June 24, 2009, when Grier filed a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq. This petition, which seeks in part to reinstate Grier's appellate rights, is currently pending before the Dauphin County Court of Common Pleas. (Doc. 10, Docket of Court of Common Pleas, No. CP-22-CR-0001482-2005, at 12-17.)

Assuming that Grier's state-court judgment became final after the discontinuance of his direct appeal on September 27, 2007, Grier had until September 27, 2008, to file this federal habeas petition, a period of time which may have been tolled from June 24, 2009, until his PCRA petition is finally litigated, if it is ultimately found to be timely. By this measure, almost two years of untolled time-- 636 days-- elapsed between the dismissal of Grier's appeal and the filing of a PCRA petition. Since this span of months exceeds the one-year limitations period prescribed by § 2244, on the face of the court records Grier's petition seems to be barred by the statute of limitations. Moreover, even this time calculation, which bars Grier's habeas petition, is problematic since it relies upon a tolling claim based upon an untimely PCRA filing. Aa a general rule, a PCRA petition, like Grier's, which was untimely under state law, will not be considered a "properly filed application for State post-conviction or other collateral review" which may toll the limitations period. Pace v.

DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

In order to avoid this result Grier turns to arguments which he is still actively litigating in his state PCRA petition. Specifically, Grier contends that the time between his lapsed appeal and his state PCRA petition should be equitably tolled because Grier was unaware that his state appellate counsel had abandoned his appeal. To sustain such an equitable tolling argument, it is incumbent upon Grier to demonstrate that: "the petitioner has '**in some extraordinary way** ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618-19 (citations omitted)(emphasis added).

In this case, Grier's equitable tolling arguments highlight the second procedural flaw in his current habeas petition. These claims lie at the heart of the state PCRA petition which Grier has pending in state court. Indeed, that petition seeks in part to restore Grier's direct appeal rights. If Grier is granted this relief by the state courts, this relief would completely address the statute of limitations questions raised in this federal habeas corpus petition since it is well-settled that a state court grant of a right to file an out-of-time appeal re-sets the date when a conviction becomes final under AEDPA's statute of limitations. Jimenez v. Quarterman, 129 S.Ct. 681 (2009). Thus,

success, or failure, in this pending state litigation would completely clarify the procedural posture of this case in federal court. Given Grier's fundamental failure to exhaust his state remedies on these issues which appear to be pivotal to the outcome of any federal habeas petition, Grier's federal pleading is the very model of an unexhausted petition which the court ordinarily should dismiss without prejudice, so that Grier can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S. 509 (1982).

While Grier has not requested a stay and abeyance in lieu of dismissal without prejudice, we have independently considered this issue, and have concluded that a stay in not necessary or appropriate in this instance. In reaching this conclusion, we recognize that such stays are not favored and in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

In this case the issue of whether: (1) Grier can show good cause; (2) the extent to which he can present potentially meritorious claims; and (3) the degree to which Grier has engaged in dilatory litigation cannot be resolved by us on the current record. Quite the contrary, these issues lie at the heart of the pending state PCRA petition

which Grier is actively pursuing. Therefore, we should refrain form making premature, and only partially informed, judgments on these issues which are being actively litigated in state court. Moreover, denying a stay will not unfairly prejudice Grier, since Grier's federal petition currently lies well outside the federal statute of limitations, and can only be saved at this time by reinstatement of his appellate rights, or development in the state proceeding of compelling grounds for equitable tolling, matters that are presently being addressed in the state courts. Therefore, allowing the state proceedings to go forward actually promotes Grier's opportunity to have his case ultimately heard in federal court by clarifying these important procedural issues. Furthermore, permitting Grier to litigate these issues in the state forum promotes orderly review of these questions, and underscores the considerations of federalism which inform the exhaustion doctrine. Therefore, this is a case where dismissal of this unexhausted petition, without prejudice, is appropriate.

### **III**. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED, without prejudice, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of May, 2010.

         *S/Martin C. Carlson*
         **United States Magistrate Judge**